UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWIN AND CARLA MCINTYRE, AND
KELLY M. HAGAN, Trustee,

        Plaintiffs,

v.

FIRST FINANCIAL GROUP (a/k/a 1ST
FINANCIAL GROUP and/or M4 FINANCIAL),
a Florida Business, AND GLOBAL CLIENT
SOLUTIONS, LLC, an Oklahoma Company,

        Defendants.

_____/

Case No.  1:12-CV-00740

HON. GORDON J. QUIST

**OPINION**

        On April 24, 2012, Plaintiffs Edwin and Carla McIntyre and Kelly M. Hagan, Trustee, filed a claim against Defendants First Financial Group (FFG) and Global Client Solutions (Global) in Antrim County Circuit Court, Michigan, claiming violation of the Credit Services Protection Act, Mich. Comp. Laws § 445.1821 *et seq.*[1]  On July 18, 2012, Global filed a Notice of Removal to this Court.  The matter currently before the Court is Global's Motion to Compel Arbitration.  (Docket no. 8, Page ID 65.)  The Motion has been fully briefed and the Court believes oral argument to be unnecessary.  W.D.Mich. LCivR 7.2(d).  For the reasons set forth below, the Court will grant Global's motion.

**I.     Background**

        FFG is a Florida business that represents debtors to creditors to negotiate repayment of debts.[2]  (Compl., Ex. A, Docket no. 1-1, Page ID 14.)  Global is a "third party sender" that processes

---

[1] Case no. 12-8732-CK.

[2] Although served with a Summons and Complaint, Defendant FFG has not responded in this case.  (*See* Exhibit 2, Docket no. 1-2, Page ID 14–17.)

payments for banks and provides account customer services for account holders.  (Jade Decl., Docket no. 10, Page ID 92.)  Plaintiffs Edwin and Carla McIntyre are Michigan residents who entered into a Client Partnership Agreement with FFG on December 4, 2008, for debt negotiation services.  (Ex. A, Docket no. 1-1, Page ID 13, 17–18.)  Global had previously processed account transactions for Rocky Mountain Bank and Trust, where Plaintiffs had an account pursuant to the Client Partnership Agreement.  (Ex. A, Docket no. 1-1, Page ID 17.)  The Client Partnership Agreement explicitly named Global as the account servicer.  (*Id.*)  Plaintiffs used the account until December 1, 2010, when they withdrew the remaining funds.  (Ex. D, Docket no. 10-4, Page ID 112.)

On December 9, 2008, Global mailed Plaintiffs a welcome letter marked "return service requested."  (Ex. A, Docket no. 1-1, Page ID 19.)  The letter contained a Special Purpose Account Agreement outlining the terms of Global's services.  (*Id.* at 20.)  Plaintiffs never signed the agreement but did use Global's account services.  (*See id.*)  On September 20, 2010, Global mailed Plaintiffs a notice marked "return service requested," stating that Plaintiffs' Rocky Mountain account administered by Global had been transferred to another FDIC-insured bank.  (Ex. C, Docket no. 10-3, Page ID 106.)  The notice also included a new Special Purpose Account Agreement (hereinafter replacement Agreement).  (*Id.* at 108.)  The notice stated that the replacement Agreement "shall govern your account going forward.  Please read it carefully."  (*Id.* at 106.)  Plaintiffs never signed the Replacement Agreement but continued to use Global's services. (*See id.*)  All three agreements—the Client Partnership Agreement with FFG and the two Agreements with Global—contained arbitration provisions. In pertinent part, the arbitration provision in the replacement Agreement with Global states,

> In the event of any controversy, claim or dispute between the parties arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity

thereof, including the termination of the scope or applicability of this Agreement to arbitrate, shall be determined by arbitration in Tulsa County, State of Oklahoma in accordance with the laws of Oklahoma, or in the county in which the consumer resides, in accordance with the Laws of the that [sic] state.

(Ex. C, Docket no. 10-3, Page ID 109.) The arbitration provision is identical to the arbitration provision in the original Special Purpose Account Agreement. (Ex. A, Docket no. 1-1, Page ID 20.)

According to Plaintiffs' Complaint, unspecified "Defendant" violated the Credit Services Protection Act (CSPA), Mich. Comp. Laws § 455.1821 secs. 3(b), (d) and (f), by (1) charging Plaintiffs a fee prior to completing the services, (2) making false or misleading statements by promising to resolve Plaintiffs' debts but failing to do so, and (3) failing to perform services within 90 days of the agreement. (Ex. A, Docket no. 1-1, Page ID 14–15.)

On August 6, 2012, Defendant Global filed a motion to compel arbitration pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq*. (Docket no. 8, Page ID 65–66.) Plaintiffs oppose the motion, arguing that the replacement Agreement does not give rise to the dispute, and, therefore, its arbitration provision is inapplicable. (Pls.' Resp., Docket no. 11, Page ID 117.) Plaintiffs further contend that claims arising under the CSPA are not subject to arbitration because the statute renders the replacement Agreement "moot, as opposed to void, unconscionable, or any other question that has come up." (*Id.* at 119.) Plaintiffs support this position by arguing that the action could be maintained without reference to the replacement Agreement. (*Id.* at 120.) Additionally, Plaintiffs assert that because the CSPA provides for the Michigan Attorney General to pursue criminal sanctions, claims arising under the Act are not arbitrable. (*Id.* at 121.)

## II.    Discussion

According to the FAA, "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and

enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

9 U.S.C. § 2. One purpose of the FAA is to override judicial reluctance to enforce arbitration

agreements. *See AT&T Mobility LLC v. Concepcion*, __ U.S. __, 131 S. Ct. 1740, 1745 (2011). The

FAA reflects "both a liberal federal policy favoring arbitration" and "the fundamental principle that

arbitration is a matter of contract." *Id.* (internal quotations omitted). In line with these principles,

courts must place arbitration agreements on equal footing with other contracts and enforce them

according to their terms. *Id.* at 1745–46.

When faced with a motion to compel arbitration under the FAA, a district court has four

tasks:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must
> determine the scope of that agreement; third, if federal statutory claims are asserted,
> it must consider whether Congress intended those claims to be nonarbitrable; and
> fourth, if the court concludes that some, but not all, of the claims in the action are
> subject to arbitration, it must determine whether to stay the remainder of the
> proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000); *see also Fazio v. Lehman Bros., Inc.*, 340

F.3d 386, 392 (6th Cir. 2003). In making these determinations, "doubts concerning the scope of

arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the

construction of the contract language itself or an allegation of waiver, delay, or a like defense to

arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25, 103 S. Ct.

927, 941 (1983). The court need not hold an evidentiary hearing before compelling arbitration as

long as the parties have been provided the opportunity to fully brief the issue and there has been no

showing of disputed factual questions going to the legal issue of arbitrability. *See Cincinnati Gas*

*& Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 159 (6th Cir. 1983).

**A.      Scope of the Arbitration Provision**

In this case, the parties do not dispute whether they agreed to arbitrate.[3]  Rather, Plaintiffs

oppose arbitration because they contend that the claim arises "without reference to the contract or

relationship at issue."  (Docket no. 12, Page ID 120.)  The parties, therefore, disagree about the

scope of the agreement.  It also appears, based on Plaintiffs' Response, (docket no. 11), that the

parties disagree about whether Congress intended Plaintiffs' claim to be arbitrable.

First, the Court must determine whether Plaintiffs' claim falls within the scope of the

arbitration provision.  The Court has the authority to decide whether Plaintiffs' claim falls within

the provision's scope.  *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 649, 106 S.

Ct. 1415, 1418–19 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the

question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.").

Regarding the scope of the arbitration provision, the "proper method of analysis here is to ask if an

action could be maintained without reference to the contract or relationship at issue.  If it could, then

it is likely outside the scope of the arbitration agreement."  *Fazio v. Lehman Bros., Inc.*, 340 F.3d

386, 395 (6th Cir. 2003).  When a contract contains an arbitration clause, there is a general

presumption of arbitrability, and any doubts are to be resolved in favor of arbitration, "unless it may

be said with positive assurance that the arbitration clause is not susceptible of an interpretation that

covers the asserted dispute.  Doubts should be resolved in favor of coverage."  *AT & T Techs.*, 475

U.S. at 650, 106 S. Ct. at 1419.  Where the arbitration clause is broad, only an express provision

excluding a specific dispute, or "the most forceful evidence of a purpose to exclude the claim from

arbitration" will remove the dispute from consideration by the arbitrators.  *Id.* at 650, 106 S. Ct. at

---

[3] Specifically, Plaintiffs do not challenge the validity of the replacement Agreement's arbitration provision. They only challenge its applicability to Plaintiffs' claim.

1419. An arbitration clause requiring arbitration of any dispute arising out of an agreement is "extremely broad." *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan*, 350 F.3d 568, 578 (6th Cir. 2003).

Here, the arbitration provision in the replacement Agreement encompasses "any controversy, claim or dispute between the parties arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the termination of the scope or applicability of this Agreement to arbitrate." Plaintiffs argue that their claim under the CSPA can be maintained without reference to the replacement Agreement. The Court disagrees. The facts underlying Plaintiffs' claim arise from Plaintiffs' relationship with Global, as set out in the replacement Agreement. Nonetheless, even if Plaintiffs' contention were true, the authority cited by Plaintiffs only indicates that Plaintiffs' claim "may" fall outside the scope of the arbitration agreement. *See id.* at 576. In light of the broad language of the present arbitration provision, the Court finds that Plaintiffs' claim is subject to arbitration even if it could be maintained without reference to the contract or relationship at issue. The Court therefore finds that the scope of the arbitration provision encompasses Plaintiffs' claim.

**B.      *Arbitrability of Plaintiffs' Claim***

Next, because Plaintiffs raise a statutory claim, the Court must determine whether Congress intended to exclude Plaintiffs' claim from arbitration. "Although all statutory claims may not be appropriate for arbitration, '[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S. Ct. 1647, 1652 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 105 S. Ct. 3346, 3354 (1985)). The burden is on the party resisting arbitration to show

that Congress intended to preclude the claims at issue from arbitration. *Gilmer*, 500 U.S. at 26, 111 S. Ct. at 1652. Throughout such an inquiry, it should be kept in mind that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone*, 460 U.S. at 24, 103 S. Ct. at 941.

Here, Plaintiffs' claim is a state statutory claim before the Court on diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1). The United States Supreme Court has previously held that the FAA is applicable to state as well as federal claims. *See Buckeye Check Cashing, Inc. v. Cardengna*, 546 U.S. 440, 445, 126 S. Ct. 1204, 1208–09 (2006) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 12, 104 S. Ct. 852, 859 (1984)). Therefore, the correct analysis is whether Congress intended to exclude Plaintiffs' claim. In support of their argument that claims under the CSPA are nonarbitrable, Plaintiffs argue that the Act provides for criminal sanctions. That argument is unpersuasive. That the Michigan Attorney General or a county prosecutor may bring criminal charges for violations of the Act is not relevant to the issue of whether Plaintiffs, in arbitration with Defendant Global, have an adequate remedy for their claim. One judge in this district has already held that claims arising under the CSPA are arbitrable. *See CSA-Credit Solutions of Am., Inc. V. Schafer*, 408 F.Supp.2d 503, 512 (W.D. Mich. 2006) (citing *Burden v. Check Into Cash of Ky., LLC*, 267 F.3d 483, 489–90 (6th Cir. 2001)) (finding in a CSPA case that the Sixth Circuit previously rejected a similar argument in the context of its discussion of void versus voidable contracts). The Court therefore finds that Plaintiffs have failed to meet their burden of demonstrating that Congress intended Plaintiffs' claim to be nonarbitrable. The claim is, in fact, arbitrable.

Since Plaintiffs have raised only one claim, and the Court finds it to be arbitrable, the Court need not address the fourth issue—"if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings

pending arbitration." *Stout*, 228 F.3d at 714.  Where, as here, it has been determined that arbitration is compelled as to all claims, it is not necessary to stay the proceedings; instead, dismissal for lack of jurisdiction is appropriate.  *See* 9 U.S.C. § 3 (only requiring a stay of proceedings upon application of one of the parties to the action).  Yet, because this dismissal is not on the merits, it will be without prejudice.  *See Costello v. United States*, 365 U.S. 265, 285–86, 81 S. Ct. 534, 545 (1961); *see also Bauer v. RBX Indus., Inc.*, 368 F.3d 569, 580–81 (6th Cir. 2004), *overruled on other grounds by Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005, 1012 (6th Cir. 2009) (analyzing when a claim should be dismissed without prejudice).

## III.  Conclusion

For the reasons set forth above, Global's Motion to Compel Arbitration will be granted.  This case will be dismissed without prejudice.

A separate Order will issue.


Dated:  November 27, 2012                                    /s/ Gordon J. Quist
                                                                    GORDON J. QUIST
                                                  UNITED STATES DISTRICT JUDGE